WEST WASHINGTON CUT MEAT CENTER, INC., Appellant, *v.* JOSEPH W. SOLOMON, Respondent.

First Department, November 22, 1940.

*Edward W. Stitt, Jr.,* of counsel [*Joseph L. Frascona* with him on the brief; *Walton, Bannister & Stitt,* attorneys], for the appellant.

*Joseph Heller,* for the respondent.

GLENNON, J. This action was instituted, in so far as the first cause of action, which was dismissed by the court, is concerned,

to recover money paid by the plaintiff to defendant over a period of years on the theory of a mutual mistake of fact. Defendant was employed as a manager at a stipulated salary and a fixed percentage of the profits. Whether or not the agreement between the parties was in writing does not appear. At the end of each year defendant was to receive his share of the profits earned during the period of his yearly employment. There seems to be no dispute of the fact that as a result of the sales made, profits, which were reflected on the books of the company, were actually earned beginning with the year 1930 and continuing until the end of 1937.

In substance, it is alleged in the complaint that in February, 1939, plaintiff discovered that its bookkeeper committed certain defalcations during the years for which defendant was paid, resulting in a loss to the company of $8,814.31. The contention seems to be that since the bookkeeper was dishonest, the total amount actually paid to the defendant was not in fact based upon a proper computation of the profits realized by the company.

If we are to concede for the purposes of this appeal that the allegations contained in the first cause of action are true and not at variance with the terms of the contract between the parties, then facts sufficient to sustain it are pleaded. As a consequence, it should not have been dismissed. Furthermore, the record indicates that the defendant did not make a motion to dismiss the complaint. In view of his failure to do so, the cause of action should not have been dismissed in any event. (*Bernard* v. *Chase National Bank*, 233 App. Div. 384.)

Defendant in his answer set up four defenses. As a partial defense, he alleged that the six-year Statute of Limitations applied to those claims which were based upon transactions prior to May 8, 1933. Of course, defendant should not be deprived of his right to plead the statute as a bar where, as here, plaintiff failed to discover the misconduct of its bookkeeper. Defendant was not in any sense a trustee of the share of the profits received by him. At most, conceding the allegations of the complaint to be true, he was simply a debtor. Therefore, we believe this defense to be sufficient from a legal standpoint. (See *Mills* v. *Mills*, 115 N. Y. 80.)

As a first affirmative defense, defendant set forth in part: "*Fifth.* That proper accounting practice and methods used in determining profits and losses has been * * * and still is, not to charge or deduct from the net profits any defalcations of employees; and in determining net profits such defalcations as set forth in the complaint, are not a proper charge against the profits." In the same defense he alleged that under proper accounting

practice and methods defalcations should be carried as accounts receivable for a period of six years from the dates thereof and that an employee who is to share in the net profits is entitled to have them computed without taking into consideration peculations or defalcations committed by a coemployee. While it well may be true that defendant under his general denials could have proven facts sufficient to sustain the allegations of this defense, still under the circumstances of this case, in order to avoid any claim of surprise on the part of plaintiff, the defendant was well within his rights in setting up his contention in the manner in which he did.

The second affirmative defense sets up an account stated between the parties. We believe that to be legally sufficient.

The last affirmative defense is based upon the theory that, prior to the service of this complaint, plaintiff received from a surety or sureties of its bookkeeper " certain moneys or property in full settlement and compromise for all the defalcations of the bookkeeper as set forth in the complaint and in full settlement thereof, and accepted such benefits for the purpose of applying the same in full settlement of the claims alleged in the complaint, all to the defendant's detriment and damage." We believe that this defense is sufficient also as a matter of law.

If plaintiff is correct in its assertion that defendant must respond in damages for the money he received as profits because of the acts of the dishonest bookkeeper, then it should follow that the defendant would be entitled to the benefits which plaintiff received by virtue of the fact that plaintiff was recompensed by either the bookkeeper or his sureties. The cost of the surety bond or bonds, in all probability, was set up in the books prior to the distribution of earnings.

The motion made by the plaintiff for an order striking out these various defenses pursuant to rule 109 of the Rules of Civil Practice was properly denied. The order, in so far as it denies plaintiff's motion to strike out the separate defenses contained in paragraphs " Second " to " Sixteenth," inclusive, of the amended answer, should be affirmed; and, in so far as it dismisses the first cause of action in the complaint, reversed, without costs.

MARTIN, P. J., UNTERMYER and DORE, JJ., concur; CALLAHAN, J., dissents as to the sufficiency of the first and second affirmative defenses.

Order, so far as it denies plaintiff's motion to strike out the separate defenses contained in paragraphs " Second " to " Sixteenth," inclusive, of the amended answer, affirmed, and, in so far as it dismisses the first cause of action in the complaint, reversed, without costs.